IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NANCY K EICKER, | § | |
| Plaintiff, | § § | |
| v. | § | 3:9-CV-1729-P |
| DEVON ENERGY PRODUCTION COMPANY, L.P., | § § § § | |
| Defendant. | § § | |

## ORDER

Now before the Court is Defendant Devon Energy Production Company, L.P.'s ("DEPCO") Motion for Summary Judgment, filed January 19, 2011. Plaintiff filed a Response on February 17, 2011. Defendant filed a Reply on March 2, 2011. After reviewing the parties' briefing, the evidence, and the applicable law, the Court DENIES Defendant's Motion for Summary Judgment.

### I. Background

Defendants DEPCO and Devon Energy Corporation originally filed this Motion for Summary Judgment on January 19, 2011. On March 10, 2011, the Court entered an Order of Partial Non-Suit terminating Devon Energy Corporation as a defendant pursuant to Nancy Eicker's ("Eicker") Notice of Partial Non-Suit filed the same day. On March 30, 2011, the Court granted Eicker's Motion for Leave to File her Second Amended Complaint which clarifies the allegations with regard to a coupling device and DEPCO's role with regard to the accident and that coupling device. DEPCO asserted that the amendment did not change the analysis of the

facts, arguments, and legal authorities set forth in DEPCO's summary judgment motion. (Doc. 70, Attach. 1 at 7.)

This cause of action arises out of an injury to Eicker which occurred during a pigging operation at one of DEPCO's pipelines. A pigging operation is a procedure used to clean out a gas pipe in order to prevent corrosion of the interior of the pipe. (Sims Dep. 15-17 (Pl.'s App. Ex. 3).) The natural gas pressure of the gas in the well pushes the "pig," a ten-inch round piece of rubber, from one end of the pipe to the other end of the pipe cleaning out water and other debris in the pipe. (Sims Dep. 17-19.) Eicker, Carl Sims ("Sims"), and Heath Scrogum ("Scrogum") were all involved in performing the pigging operation. (Sims Dep. 14:8-25 (Pl.'s App. Ex. 3.).) Sims and Scrogum worked for DEPCO and Eicker worked for Bridgeport. Sims was the senior employee on the job. (Sims Dep. 15:24-25-16:1-3.) Sims's foreman was not present for the pigging operation, and in his absence, described Carl as the person in charge. (Carper Dep. 36-37.) Eicker had not previously been involved in performing a pigging operation, but had performed other procedures such as "pulling a well" and vacuuming a well. (Eicker Dep. 13-14 (Pl.'s App. Ex. 2); Sims Dep. 21:16-17 (Pl.'s App. Ex 3).) Carl Sims had performed pigging operations approximately sixty or seventy times before the operation which led to Eicker's injury. (Sims Dep. 14:8-13 (Pl.'s App. Ex. 3.).) Scrogum and Sims conducted pigging operations routinely. (Sims Dep. 21.)

Sims instructed Eicker to open the hatch to her truck; when she was unable to open it because it was rusted, he helped her open it. (Sims. Dep. 25.) Sims advised Eicker to retrieve a three-inch hose for the operation. (*Id.* at 27.) Sims performed three connections while Eicker stood by—he connected two hoses together, one side of the hose to the pig receiver, and one side of the hose to the coupling on the back of Eicker's truck. (*Id.* at 28-29.) When Sims connected the hose

to the coupling, he pulled down two "ears" on the coupling device and wired them down with a "line-locating flag" instead of using a "safety cotter pin." (*Id.* at 29-31.) Sims used the line-locating flag to wire down the ears on prior pigging procedures about half the time. (*Id.* at 32.) Sims was taught by his foreman during on-the-job training to use the line-locating flag to wire the ears down when safety cotter pins were not available. (*Id.* at 34-35.)

Eicker stayed clear from the back of the truck initially during pumping operations. (Eicker Aff. 2 (Pl.'s App. Ex. 7 at 44).) Pressure-reading devices were located at the pigging receiver and on the truck in order to determine the pressure levels during the operation. (Sims Dep. 36-38.) Sims shut off the pipeline during the pigging operation and instructed Eicker to check the sight glass to determine how much volume was left before the truck was full. (Eicker Dep. 15; Eicker Aff. 2.) Eicker walked over to the truck and looked at the sight glass, determined the amount of space remaining, and signaled to Sims with her hands. (*Id.*) Eicker was informed by Bridgeport no one was supposed to position themselves at the back of the truck during high-pressure service jobs. (Eicker Dep. 98, 100 (Def.'s App. 78, 80). And Sims's foreman testified that no one was supposed to position themselves at the back of the truck while the hose was blowing downline because the hose may disconnect from the truck. (Carper Dep. 26.) Before Eicker could return to a safe location, Sims reopened the pipeline. (Eicker Dep. 16; Eicker Aff. 2.) The connection broke at that time and struck Eicker who was not in a safe location. (*Id.*) Sims did not warn Eicker not to go to the back of the truck; he assumed she knew not to. (Sims Dep. 54.) Sims testified that he did not instruct her to go to the back of the truck. (Sims Dep. 53:25-54:1) Sims also testified that Eicker's account of the accident as relayed by her attorney—that "[Sims] told her to go to the back of the truck, check the level, that she checked the level,

signaled to [Sims] by some method how full the truck was . . .[a]nd that before she could get back, [Sims] started the pigging operation again"—is untrue. (Sims Dep. 55:16-24).

The DEPCO foreman and the Bridgeport safety representative agreed that Eicker's injury occurred as a result of the coupling not being pinned or wired to the truck rather than the coupling not being wired to the hose. (Carper Dep. 19-21 (Pl.'s App. Ex. 4.).) Carper acknowledged that when Sims connected the hose to the coupling on the truck, whether the coupling was wired to the truck by wire or cotter pin would have been readily apparent to Sims.

## II. Legal Standard & Analysis

### A. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine dispute for trial and of identifying those portions of the record that demonstrate such absence. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(a) (2010) (replacing "issue" with "dispute"). However, all evidence and reasonable inferences to be drawn there from must be viewed in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact dispute. Fed. R. Civ. P. 56(e) (2010); Fed. R. Civ. P. 56(a) (2010) (replacing "issue" with "dispute"); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87

(1986). The party defending against the motion for summary judgment cannot defeat the motion, unless he provides specific facts demonstrating a genuine dispute of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See id.* at 249–50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); *see also Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993) ("[U]nsubstantiated assertions are not competent summary judgment evidence." (citing *Celotex*, 477 U.S. at 324)). Further, a court has no duty to search the record for evidence of genuine issues. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### B. Application of Chapter 95 of the Texas Civil Practice and Remedies Code

Section 95.003 of the Texas Civil Practice and Remedies Code provides, in part, that a "property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies and improvement to real property." That section provides an exception if the property owner exercises or retains some control over the manner in which the work is performed and the property owner had actual knowledge of the danger or condition resulting in the personal injury. *Id.* "Control can be exercised in two ways: by (1) a contractual right of control, or (2) an exercise of actual control." *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 122–23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex.App.—Houston [14th Dist.] 2007, pet. denied) and *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002)). "To be liable, the owner must

have the right to control the means, methods, or details of the independent contractor's work to the extent that the independent contractor is not entirely free to do the work his own way." *Abarca*, 305 S.W.3d at 124 (citing *Ellwood*, 214 S.W.3d at 700). The control must relate to the injury the negligence causes. *Id.* It is not enough that the owner has the right to order the work to stop and start or to inspect progress or receive reports. *Id.* Nor is it enough to recommend a safe manner for the independent contractor's employees to perform the work. *Id.* Here, Eicker raises a fact issue that DEPCO exercised actual control that: (1) related to the activity that caused her injury, (2) involved either the power to direct the work be done in a certain manner or forbid its being done in an unsafe manner, and (3) related to the injury that the alleged negligence caused. *Id.* (citing *Bright*, 89 S.W.3d at 607 and *Coastal Marine Serv., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex.1999)). It is undisputed that Sims was experienced in conducting pigging procedures and that Eicker had no experience in conducting pigging procedures. Further, it is undisputed that Sims conducted all of the connections for the pigging procedure except for securing the connection between the coupling device and Eicker's truck. It is also undisputed that Sims did not check the coupling device's connection with the truck, but could have as it was in plain view. (Sims Dep. 43; Carper Dep. 21.) Sims also operated the valve which opened the pipeline during the pigging operation and blew the gas, water, and debris downline. Viewing the evidence in the light most favorable to Eicker, Sims instructed Eicker to check the sight glass and did not wait until she moved to a safe location before starting the pigging procedure again, causing her injury. Additionally, Eicker raises a fact issue that Sims, and therefore DEPCO, had actual knowledge of the danger that no one should get within twenty feet of the back of the truck and hose while the hose was blowing downline yet failed to warn Eicker before restarting the pigging procedure. While Eicker admits to knowing the danger of standing behind the truck

(Eicker Dep.100 (Def.'s App. 80).), she contends that she did so in order to check the sight glass at Sims's direction. (Eicker Aff. 2.) Further, Eicker and Carper's testimony raises a fact issue that Sims, and therefore DEPCO, had actual knowledge that the coupling on the truck should be wired down but failed to warn Eicker that it wasn't at the time that he checked the connections.[i] Accordingly, summary judgment as to the application of Section 95.003 of the Texas Civil Practice and Remedies Code is denied.

### C. DEPCO's Objections

DEPCO's objection to Plaintiff's Exhibit 6 at 41 is sustained as it is conceded by Plaintiff to be a subsequent remedial measure and is being used by Eicker to establish that a warning as to the "danger zone" was needed. (Pl.'s Resp. 13.) To the extent that Eicker contends the procedures are being used to address the feasibility of precautionary measures pursuant to the Rule 407 exception to exclusion, feasibility of the precaution is not at issue here. All other objections are overruled.

### III. Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Signed this 22nd day of April, 2011.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

[i] Eicker testified that the coupling on her truck had wings that had to be locked down by pins and that she inspected the coupling the morning of the accident. (Eicker Dep. 138, 140.)